PEOPLE *v.* GILL

1. ARREST—PROBABLE CAUSE.

Probable cause existed to arrest the defendant for murder where a fingerprint on the victim's shoe matched a print taken of a "Joseph Gill" a year before the murder; the defendant was named Joseph Gill; the defendant had been a boyfriend of the victim; and the victim had told a girlfriend on the night of the murder that she was meeting a person named "Joe" that night.

2. CRIMINAL LAW—FINGERPRINTING—PERMISSIBILITY—VALID ARREST.

Fingerprinting an accused is permissible where there has been a valid arrest and the police conduct does not shock the conscience of the courts (US Const, Am 4).

3. CRIMINAL LAW—FINGERPRINTS—VALID ARREST.

Refusing to suppress fingerprints of the defendant, taken after valid arrest on probable cause, consisting of the facts that a fingerprint on the murder victim's shoe matched the fingerprint on an old arrest card of "Joseph Gill" and that the defendant was named "Joseph Gill" was proper even though the defendant had once before been unlawfully arrested on the same murder charge and illegally fingerprinted.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arrest §§ 44–48.
[2, 3] 21 Am Jur 2d, Criminal Law § 369.
  29 Am Jur 2d, Evidence §§ 374, 770.
  Fingerprints, palm prints, or bare footprints as evidence.   28 ALR2d 1115.
[4] 40 Am Jur 2d, Homicide §§ 416–419.
  Admissibility of photograph of corpse in prosecution for homicide or civil action causing death.   159 ALR 1413, s. 73 ALR2d 769.
[5] 40 Am Jur 2d, Homicide §§ 337, 536.
  53 Am Jur, Trial § 970 *et seq.*
[6] 40 Am Jur 2d, Homicide §§ 460, 463.

4. HOMICIDE — FIRST-DEGREE MURDER — EVIDENCE — PHOTOGRAPHS
— ADMISSIBILITY.

Admitting into defendant's trial for first-degree murder color
slides showing the murder victim's battered body was not an
abuse of discretion, because the slides were relevant in show-
ing premeditation and malice aforethought.

5. CRIMINAL LAW—MISTRIAL—IMPROPER QUESTIONING.

Denying a motion for a mistrial, based on the prosecution's
asking the person who fingerprinted the defendant, charged
with murder, whether the witness had made any comment to
the defendant about the rough area on one of the defendant's
fingers was not an abuse of discretion where the trial court
ruled the question improper, the defense withdrew its objec-
tion to the question, and a curative instruction to the jury
was given.

6. HOMICIDE — MURDER — PROSECUTOR'S REMARKS — PERMISSIBLE
ARGUMENT — INFERENCES.

Prosecutor's reference to the "bloody fingerprint" of the defend-
ant, charged with murder, was a permissible argument where
there was testimony that the defendant's fingerprint was in a
"red substance" and that the murder victim had been severely
beaten, because the conclusion that the "red substance" was
"blood" was a reasonable inference.

Appeal from Genesee, Stewart A. Newblatt, J.
Submitted Division 2 March 2, 1971, at Lansing.
(Docket No. 7419.) Decided March 22, 1971.

Joseph Gill was convicted of first-degree murder.
Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Robert F. Leonard,*
Prosecuting Attorney, and *Donald A. Kuebler,*
Chief Assistant Prosecuting Attorney, for the
people.

*Jerome F. O'Rourke (James Bearinger,* of coun-
sel), for defendant on appeal.

Before: R. B. BURNS, P. J., and J. H. GILLIS and
T. M. BURNS, JJ.

R. B. BURNS, P. J.  The facts leading to defend-
ant's first-degree murder[1] conviction are relatively
uncomplicated and, with few exceptions, undisputed.

On the morning of August 24, 1967, the half-nude
body of a 17-year-old girl was found in a creek lying
face down in four to six inches of water.  She had
been severely beaten about the face and head and
apparently dragged by her feet, on her back, from
some bushes in a nearby park to the creek where
she was drowned.  Her right shoe was found along
the path where she had been dragged.  A finger-
print, found in a "reddish substance" on the shoe,
was later matched to the defendant's left index
fingerprint.  On August 28, 1967, the defendant was
interrogated, arrested, and fingerprinted in connec-
tion with the brutal slaying.  On the same day,
without being arraigned, defendant was released
from custody.  On October 11, 1967, defendant was
re-arrested and fingerprinted a second time after
the crime lab determined that his first print matched
the one found on the victim's shoe.

Prior to trial the court granted defendant's
motion to suppress the fingerprints taken on August
28, 1967, on the ground that the police did not have
probable cause to arrest defendant at that time.[2]
The fingerprints taken after the October 1967 arrest
were also suppressed by the trial court.  Justifica-

---

[1] MCLA § 750.316 (Stat Ann 1954 Rev § 28.548).

[2] In its opinion the trial court notes that the totality of informa-
tion possessed by the arresting officer prior to the arrest was that
defendant had dated the deceased and had shown deception on some
polygraph tests.  The fingerprints were suppressed according to the
well-entrenched policy of disallowing the state to benefit from "prod-
ucts" of their illegal conduct.  *Davis* v. *Mississippi* (1969), 394 US
721 (89 S Ct 1394, 22 L Ed 2d 676).  Fingerprints obtained as the
result of an illegal arrest have been held to be such a product.
*Davis* v. *Mississippi, supra.*

tion for suppression of the October 1967 prints was based on the judicial policy of excluding all evidence obtained as a result of illegal police conduct. *Silverthorne Lumber Co.,* v. *United States* (1920), 251 US 385 (40 S Ct 182, 64 L Ed 319, 24 ALR 1426).[3] Since the second arrest was founded upon matching of the illegally-obtained first print, the second arrest prints were determined to be "fruits of the poisonous tree."[4] After suppressing both sets of prints the trial court, pursuant to a motion by defense, dismissed the first-degree murder charge.

The prosecution obtained a 1966 set of fingerprints on a "Joseph Gill" who had been arrested for a 1966 felony. After matching the print taken pursuant to the arrest of Joseph Gill in 1966 to the print on the victim's shoe, the police again arrested defendant and fingerprinted him once on October 14, 1968, and again on October 23, 1968. These 1968 prints presented the primary link between defendant and the slaying of the young girl.

In his first assigned error defendant points to the trial court's refusal to grant his motion to suppress the 1968 prints. Defendant's argument that the 1968 prints were products of an illegal arrest is not persuasive. Arrests based on "probable cause" are within constitutional guidelines.[5] The arrest warrant in question was based upon the following set of facts:

The fingerprint detected on the dead girl's shoe matched a 1966 print associated with a 1966 arrest of one "Joseph Gill"; the defendant had been one of the victim's boyfriends; and the victim had told

---

[3] See, also, *Wong Sun* v. *United States* (1963), 371 US 471 (83 S Ct 407, 9 L Ed 2d 441).

[4] *Id.*

[5] US Const, Am 4; Const 1963, art 1, § 11.

her girlfriend the night of the murder that she was meeting a person named "Joe" that night.[6]

Certainly this information would cause a prudent and cautious man to believe defendant committed the murder.[7] Since the arrest was constitutionally permissible the subsequent fingerprinting was valid.[8] Indeed the fingerprinting was necessary in order to show conclusively that the "Joseph Gill" of the 1966 arrest card was the defendant. Given a valid arrest and providing the police conduct does not "shock the conscience" of the court, it is entirely proper to fingerprint the accused. *United States* v. *Krapf* (CA3, 1961), 285 F2d 647; *Bynum* v. *United States* (1960), 107 App DC 109 (274 F2d 767). See, also, *Smith* v. *United States* (1963), 117 App DC 1 (324 F2d 879).

Knowledge of the 1966 arrest card was not the product of illegal police conduct. Suppressing the 1968 prints would not vindicate defendant's Fourth Amendment rights; such action would only defeat the avowed purpose of the exclusionary rules, *i.e.*, to force the state to seek legitimate evidence before infringing upon the freedom of the citizens it serves.[9]

Defendant's argument that his fingerprints were taken "despite objection" is not supported by the record. Furthermore any fingerprints taken subsequent to a valid arrest, providing the process does not shock the court's conscience, does not violate

---

[6] The defendant's name is Joseph Gill.

[7] This belief constitutes "probable cause" within the meaning of the Fourth Amendment. *Carroll* v. *United States* (1925), 267 US 132 (45 S Ct 280, 69 L Ed 543, 39 ALR 790); *Brinegar* v. *United States* (1949), 338 US 160 (69 S Ct 1302, 93 L Ed 1879); *McCray* v. *Illinois* (1967), 386 US 300 (87 S Ct 1056, 18 L Ed 2d 62).

[8] *Smith* v. *United States* (1963), 117 App DC 1 (324 F2d 879); *Bynum* v. *United States* (1960), 107 App DC 109 (274 F2d 767).

[9] It might also be noted that no "causal chain" between the primary illegality and the fingerprinting evidence has been shown by defendant. See *People* v. *Tucker* (1969), 19 Mich App 320, 329.

Fourth Amendment protections. *Cf. Schmerber* v. *California* (1966), 384 US 757 (86 S Ct 1826, 16 L Ed 2d 908). See, also, *Smith* v. *United States, supra.*

Defendant's argument that he was unconstitutionally deprived of counsel during fingerprinting is made for the first time on appeal. Finding no evidence of manifest injustice we refuse to hear questions not raised in the trial court.[10] *People* v. *Camak* (1967), 5 Mich App 655; *People* v. *Teal* (1969), 20 Mich App 176.

Defendant next contends that the admission and projection of two large color slides of the victim's battered body at trial level was reversible error. Both slides showed parts of the victim's battered body as it laid in the morgue. The admission of the slides into evidence was within the sound discretion of the trial court. *People* v. *Rogers* (1968), 14 Mich 207; *People* v. *Gregory* (1969), 21 Mich App 76; *People* v. *Hoffman* (1970), 24 Mich App 244. This Court cannot find any clear abuse of discretion in allowing the slides into evidence. We cannot say that their possible prejudicial effect clearly outweighed their probative value. See *People* v. *Turner* (1969), 17 Mich App 123, 130. The slides were relevant to show premeditation and malice aforethought; these elements of first-degree murder must be proven by the prosecutor beyond a reasonable doubt. See *People* v. *Surles* (1970), 29 Mich App 132.

In his next assignment of error defendant argues that the trial court should have granted his motion for a mistrial based on the unfavorable position he

---

[10] Defendant's claim, irrespective of the procedural defect, has dubious merit. *Gilbert* v. *California* (1967), 388 US 263 (87 S Ct 1951, 18 L Ed 2d 1178); *Pearson* v. *United States* (CA5, 1968), 389 F2d 684.

was placed in before the jury in having to object to a question by the prosecution. The question involved in this issue was asked of a witness who fingerprinted the defendant on October 14, 1968. The question and answer were:

"*Q.* Did you make any comment to him about the rough area on the left index finger?
"*A.* No, sir. I did not."

Pursuant to defense counsel's objection the court ruled the question improper and objectionable. The trial court did not abuse its discretion in denying the motion for a mistrial.[11] Not only did defense counsel withdraw his objection to the question but his request for a curative instruction was granted at the conclusion of the proofs.[12]

Next the defendant argues that the prosecutor's reference in closing argument to the "bloody fingerprint of Joseph Gill" should have been stricken and the jury instructed to disregard it because there was no direct evidence that the defendant's finger was bloody. Since there was previous testimony that the fingerprint was in a "red substance" and that the victim was severely beaten, the conclusion that the "red substance" was "blood" was a reasonable inference which the prosecutor was entitled to argue. *People* v. *Morlock* (1925), 233 Mich 284; *People* v. *Badge* (1968), 15 Mich App 29; *People* v. *Russell* (1970), 27 Mich App 654.

---

[11] A mistrial should be granted only where the error is so grievous that the prejudicial effect can be removed in no other way. See *People* v. *Watson* (1943), 307 Mich 596; *People* v. *Hayton* (1970), 28 Mich App 673.

[12] "I instruct you, that it is a lawyer's duty to object when he feels that improper testimony is being offered or an improper procedure is being implied, and it is the duty of the court to rule under such circumstances. *You are not to consider either counsel's objections as evidence or inferences of guilt or innocence of the defendant Joseph Gill.*" (Emphasis supplied.)

The defendant argues that even if none of the foregoing issues constitutes reversible error that taken with alleged errors of lesser significance the defendant was denied due process of law and a fair trial. After review of the record we are satisfied that defendant received a fair trial. The trial judge was not in error in denying a mistrial and we are convinced that the verdict was a just one.

Affirmed.

All concurred.