**STATE of Missouri, Respondent,**

v.

**Nathaniel HARRIS, Appellant.**

**No. 51181.**

Supreme Court of Missouri,

Division No. 2.

Nov. 8, 1965.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 13, 1965.

Norman H. Anderson, Atty. Gen., Walter W. Nowotny, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

James A. Bell, St. Louis, for appellant.

FINCH, Judge.

This is an appeal from a conviction of defendant, with added charges under the Habitual Criminal Act, for receiving money, without consideration, from the proceeds of the earnings of a woman engaged in prostitution in violation of § 563.040. (Unless otherwise indicated, all statutory references are to RSMo 1959, V.A.M.S.) The trial court found that appellant had been convicted of eight prior felonies on which he had been incarcerated and subsequently released. Punishment was fixed at ten years' imprisonment.

Appellant was represented from the time of arraignment throughout all proceedings in the trial court by counsel of his own selection. This included the filing and presentation of a motion for new trial and approval of the transcript on appeal. Apparently appellant elected not to file a brief in this court but we will consider all matters properly raised in appellant's motion for new trial and portions of the transcript of the record set forth in Supreme Court Rules 28.02 and 28.08, V.A.M.R.

The State's evidence will support the following statement of facts: Sharon Marie Anderson, age 17, went on February 13, 1964, to the Greyhound Bus Station in St. Louis for the purpose of taking a bus to Doniphan, Missouri, to stay with her grandmother. Sharon had been in the Training School for Girls at Chillicothe on two occasions and had been in and out of institutions since she was 14. The proposed trip was occasioned by the fact that her stepmother asked her to leave their home in St. Louis and her brother and cousin brought her to the bus station to wait for her bus. While at the bus station she talked to the appellant, a cab driver, and he invited her to go somewhere with him, to which she agreed. Appellant rented a hotel room where Sharon stayed that night. The next day appellant took Sharon to the apartment of a Katherine Parrish. Appellant talked to Parrish and then told Sharon they had a job for her. They discussed the de-

tails which included the fact that Sharon was to turn over to appellant the money she earned. Appellant told Sharon he would have a place for her to stay, would buy food and would give her clothes. After that Parrish took Sharon to an apartment at 5899 Clemens where she engaged in acts of intercourse for money with various men until February 26, 1964, when she and Katherine Parrish were arrested. During that period of time Sharon had earned about $150.00. She kept about $5.00 for herself and gave one-half of the rest to appellant and the other half to Parrish.

No evidence was offered by appellant.

The first point raised in appellant's motion for new trial is that the credibility of the State's witness was such that no weight should have been given to her testimony, a prima facie case was not made and there should have been a judgment of acquittal at the close of the State's case.

The principal witness against appellant was Sharon Marie Anderson. Her testimony was not contradicted by anyone. Presumably the assignment in the motion for new trial has reference to the fact that Sharon admitted that she had told appellant that she was nineteen when in fact she was seventeen and to the fact that when first taken into custody on February 26, 1964, she told the detective that her name was Sherrie Blankenship. This, she said, was at the suggestion of Parrish.

The court instructed the jury on the credibility of witnesses and the jury had the function of judging the credibility of Sharon in the light of the fact that she admittedly had lied on those two occasions. These falsehoods were not as to material matters with reference to the offense charged and did not destroy the substantiality of her testimony. State v. Thursby, Mo., 245 S.W.2d 859, 862. Likewise, the fact that Sharon was engaged in prostitution and had been in the Training School for Girls did not prevent her evidence from being substantial. State v. Armstead,

Mo., 283 S.W.2d 577, 579. Her credibility was for the jury. There was ample evidence, if believed, to establish guilt of the defendant.

The next several assignments in appellant's motion for new trial attack the failure of the court's instructions to define the term "consideration" used in Instruction No. 1.

The statute under which defendant was prosecuted, § 563.040, provides as follows:

"That any person who shall knowingly accept, receive, levy or appropriate any money or other valuable thing, without consideration, from the proceeds of the earnings of any woman engaged in prostitution, shall be deemed guilty of a felony * * *."

Instruction No. 1 submitted to the jury the question of whether defendant accepted or received "without any consideration therefor" any part of the earnings of Sharon Marie Anderson from prostitution, but did not define the term "consideration." Defendant tendered Instruction No. A which defined "consideration" but it was refused by the court. It was as follows:

"Consideration, as used in these instructions, means that the prosecuting witness, Sharon Marie Anderson, did not receive anything of value in exchange for money she allegedly gave defendant, and if you find that she did receive from defendant something of value, in exchange for the money she gave defendant, if you so find that she did give defendant money earned from prostitution, then you will find the defendant not guilty."

Under the concept of consideration as defined in refused Instruction No. A, if appellant gave anything of value to Sharon in return for all or part of her earnings from prostitution, he could not be convicted for he would not have received such sums without consideration. Anything of value would include clothing given by appellant, or food provided, or even the bed furnished on which the acts of prostitution were performed. This concept includes services as

well as things and would include acts of one in bringing men to her for the purpose of engaging her services. Was this the concept of consideration meant and intended by the Legislature in what is now § 563.040 when it used the words "without consideration?" We think not.

Section 563.040 was Section 3 of a statute enacted in 1913. See Laws Missouri 1913, p. 219. The section is almost identical with a statute enacted in New York in 1910 except that the Missouri Act did not make such acceptance of the money or thing presumptive evidence of lack of consideration, as did the New York statute. See N.Y. Penal Law, § 2460, Consol.Laws, c. 40, par. 8, as added by Laws 1910, c. 618. In discussing this statute in People v. Fegelli, 163 App.Div. 576, 148 N.Y.S. 979, the New York court remarked that a report concerning prostitution in New York City had pointed out that a practice of taking a percentage of the earnings of women engaged in prostitution was a leading cause of the growth of the evil in question. It was observed that this and other similar information was before the New York Legislature when it adopted the Act in 1910. That, no doubt, was a factor in the fixing of rather heavy penalties for the offense. We do not know whether the Missouri statute was taken from the New York Act but the similarity of language is striking. In addition, the very title of the 1913 Act in Missouri indicates a purpose of punishing persons who either sought to place or keep women in the business of prostitution, and this included persons knowingly participating in the proceeds thereof. Certainly the Legislature did not intend by the terms of § 563.040 to exonerate those who agree with a woman to furnish her with the means to conduct her trade, namely, bed, board or clothing, in return for her agreement to turn over her earnings received from pros-

titution. An interpretation that it did so intend would excuse the bawdy house operator, the madam, and even the pimp or procurer, all persons at whom the statute obviously was directed. It would excuse appellant who took Sharon to one who operated a bawdy house and arranged with her to put Sharon to work, with bed, board and clothing furnished, in return for which, and as a part of the agreement placing Sharon in commercialized prostitution, appellant was to receive one-half of her earnings, with the other half thereof going to the madam. We conclude the Legislature did not so intend.

We are of the opinion that the term "without consideration" has reference to instances in which the consideration is not incidental to unlawful conduct which places the woman in prostitution or continues her therein.[1] For example, if a known prostitute went into a store and made a purchase, or went to a physician and received medical attention (paying the storekeeper or physician with money obtained by engaging in prostitution), the goods or services would constitute consideration for the amount paid by the prostitute. The storekeeper or physician would not be guilty of accepting or receiving, without consideration, earnings of a woman received from prostitution, even though he knew of the woman's trade and the source of her earnings. This hypothetical situation differs from one in which the articles or services are furnished in return for all or a percentage of the woman's earnings from prostitution. The latter is an agreement which places her in or continues her in unlawful activity and has the effect of encouraging prostitution. In such a situation the amount to be received for the goods or services furnished to her has no relation to the value thereof but rather is dependent upon and geared to the in-

---

1. It has been held in a civil case involving a statute relating to negotiable instruments that the term consideration as used in the statute meant a *lawful* consideration. See Gershon v. Ashkanazie, 239 Mo.App. 1012, 199 S.W.2d 38. This holding is consistent with the interpretation we make herein of the term as used in the statute under which appellant was prosecuted.

dustry and vigor with which she plies her trade. There are cases in which the defendant has furnished a room or board or has brought men to a woman engaged in prostitution and in return has received all or a percentage of the amounts received by the woman. In those instances convictions under the statute here involved were upheld. See State v. Howe, 287 Mo. 1, 228 S.W. 477; State v. Johnson, 350 Mo. 928, 169 S.W.2d 339; State v. Thursby, Mo., 245 S.W.2d 859; and State v. Armstead, Mo., 283 S.W.2d 577.

■ It follows that the trial court did not err in refusing to give appellant's verdict-directing Instruction No. A.

In this case there was no evidence whatsoever that appellant furnished a lawful consideration to Sharon. Any further definition in accordance with the views expressed herein would have been harmful and not beneficial to the appellant herein, and he could not possibly have been prejudiced by a failure to further define a lawful consideration. Hence we do not reach for decision and do not decide the propriety of an instruction further defining a lawful consideration in a case where the record might provide a basis therefor.

■ Finally, the motion for new trial complains of argument of counsel to the jury. An examination of the transcript discloses only one objection by counsel for appellant to argument by the Circuit Attorney. The court promptly sustained an objection to that argument and directed the jury to disregard it. No further action was requested and hence nothing for review is preserved.

We have examined all those matters on the record before us pursuant to Supreme Court Rule 28.02, V.A.M.R., and find no error.

The judgment is affirmed.

All of the Judges concur.