PEOPLE *v.* HILL

1. PROSTITUTION — ACCEPTING PROSTITUTE'S EARNINGS — "WITHOUT CONSIDERATION" — STATUTES.

Statutory language that anyone who knowingly accepts or receives any money "without consideration" from the earnings of a prostitute is guilty of a felony refers to a person who accepts consideration incidental to unlawful conduct which places a woman in prostitution or continues her in prostitution; a person who accepts the earnings of a prostitute for consideration not incident to the unlawful conduct which places a woman in prostitution or keeps her in prostitution is not guilty of that crime (MCLA § 750.457).

2. PROSTITUTION—ACCEPTING PROSTITUTE'S EARNINGS—CONSIDERATION—QUESTION OF FACT.

Whether a defendant, charged with accepting the earnings of a prostitute, received the money as consideration, for such things as room and board, is an issue for the trier of fact (MCLA § 750.457).

3. PROSTITUTION — ACCEPTING PROSTITUTE'S EARNINGS — "WITHOUT CONSIDERATION".

Finding that defendant, charged with accepting the earnings of

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 42 Am Jur, Prostitution § 9.
Constitutionality and construction of pandering acts. 74 ALR 311.
[4] 21 Am Jur 2d, Criminal Law § 315.
Incompetency of counsel chosen by accused as affecting validity of conviction. 74 ALR2d 1390.
[5–7] 58 Am Jur, Witnesses § 885.
Right of witness detained in custody for future appearance to fees for such detention. 50 ALR2d 1439.

a prostitute, had received the prostitute's earnings without consideration was not error where the defendant received $1200, defendant claimed that he had provided the prostitute with room, board, and clothing, and the evidence showed that the defendant had provided these necessities for a three-week-period, because the value of these necessities was far below the $1200 the defendant received from the prostitute's earnings.

4. CRIMINAL LAW—EFFECTIVE COUNSEL—CALLING WITNESSES.
   A defendant is not necessarily denied adequate representation by his attorney's failure to call a witness.

5. CRIMINAL LAW—MATERIAL WITNESS—CONFINEMENT—STATUTORY FEE.
   A material witness committed by the court to jail to preserve his testimony is entitled to the *per diem* statutory witness fee for each day of detention (MCLA §§ 767.35, 775.13).

6. CRIMINAL LAW—MATERIAL WITNESS—STATUTORY FEE—NATURE OF TESTIMONY.
   A material witness committed to jail to preserve his testimony is entitled to the *per diem* statutory witness fee regardless of whether his testimony is favorable to the defense or prosecution (MCLA § 775.13).

7. CRIMINAL LAW—MATERIAL WITNESS—STATUTORY FEE—DETERMINATION.
   Due process does not require that the statutory *per diem* witness fee be paid to a detained prosecution witness in advance of his testifying, because it is impossible for a court to determine either how long a witness might have to be detained prior to trial or how long his presence at trial might be required (MCLA § 775.13).

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J.   Submitted Division 1 February 3, 1971, at Detroit.   (Docket No. 6966.)   Decided April 20, 1971.   Leave to appeal applied for February 4, 1972.

William P. Hill was convicted of accepting money from the earnings of a prostitute.   Defendant appeals.   Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Gerard A. Poehlman,* Assistant Prosecuting Attorney, for the people.

*William R. Stackpoole,* for defendant on appeal.

Before: Lesinski, C. J., and R. B. Burns and Levin, JJ.

Lesinski, C. J. Defendant was convicted of accepting money from the earnings of a prostitute, MCLA § 750.457 (Stat Ann 1954 Rev § 28.712), by the trial court sitting without a jury. The prosecution's witness, Laverne Bradley, testified that defendant invited her to work as a prostitute for him, that she and defendant lived together from August 7, 1968 to August 29, 1968, and that she handed over virtually all of her earnings to defendant during that period. The witness also related that defendant paid the rent on their hotel room and purchased food and clothing for her during that period. Defendant took the stand and acknowledged that he and Miss Bradley had lived together for a time but denied that he encouraged her to engage in acts of prostitution or that he had accepted any portion of her earnings.

On appeal, defendant directs our attention to the witness's testimony to the effect that defendant met the bills that the witness incurred while the pair dwelt under the same roof. The penal statute under which defendant was prosecuted provides:

"Any person who shall knowingly accept, receive, levy or appropriate any money or valuable thing *without consideration* from the proceeds of the earn-

ings of any woman engaged in prostitution, or any person, knowing a female to be a prostitute, shall live or derive support or maintenance, in whole or in part, from the earnings or proceeds of the prostitution of said prostitute, or from moneys loaned or advanced to or charged against her by any keeper or manager or inmate of a house or other place where prostitution is practiced or allowed, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years. *And such acceptance, receipt, levy or appropriation of such money or valuable thing, shall, upon any proceeding or trial for violation of this section, be presumptive evidence of lack of consideration.*" (Emphasis supplied.)

Defendant argues that, in light of Miss Bradley's testimony, the trial court's finding of fact that Miss Bradley gave her earnings to defendant without consideration must be regarded as clearly erroneous. Defendant maintains that the statutory phrase "without consideration" may not be interpreted to mean "without adequate consideration" and that the furnishing of such necessities of life as food, housing, and wearing apparel constitutes such consideration as to take one's conduct out of the ambit of the statute. We find persuasive the reasoning of the Missouri Supreme Court in *State* v. *Harris* (Mo, 1965), 396 SW2d 585. In construing a statute almost identical to the one before us, the Court noted when presented with facts substantially similar to the instant case, at pp 587–589:

"Under the concept of consideration as defined in refused Instruction No. A, if appellant gave anything of value to Sharon in return for all or part of her earnings from prostitution, he could not be convicted for he would not have received such sums without consideration. Anything of value would include clothing given by appellant, or food provid-

ed, or even the bed furnished on which the acts of prostitution were performed. This concept includes services as well as things and would include acts of one in bringing men to her for the purpose of engaging her services. Was this the concept of consideration meant and intended by the Legislature in what is now [RS Mo 1959, VAMS] § 563.040 when it used the words 'without consideration?' We think not.

* * *

"Certainly the Legislature did not intend by the terms of § 563.040 to exonerate those who agree with a woman to furnish her with the means to conduct her trade, namely, bed, board or clothing, in return for her agreement to turn over her earnings received from prostitution. An interpretation that it did so intend would excuse the bawdy house operator, the madam, and even the pimp or procurer, all persons at whom the statute obviously was directed. It would excuse appellant who took Sharon to one who operated a bawdy house and arranged with her to put Sharon to work, with bed, board and clothing furnished, in return for which, and as a part of the agreement placing Sharon in commercialized prostitution, appellant was to receive one-half of her earnings, with the other half thereof going to the madam. We conclude the Legislature did not so intend.

"We are of the opinion that the term 'without consideration' has reference to instances in which the consideration is not incidental to unlawful conduct which places the woman in prostitution or continues her therein. For example, if a known prostitute went into a store and made a purchase, or went to a physician and received medical attention (paying the storekeeper or physician with money obtained by engaging in prostitution), the goods or services would constitute consideration for the amount paid by the prostitute. The storekeeper or physician would not be guilty of accepting or

receiving, without consideration, earnings of a woman received from prostitution, even though he knew of the woman's trade and the source of her earnings. This hypothetical situation differs from one in which the articles or services are furnished in return for all or a percentage of the woman's earnings from prostitution. The latter is an agreement which places her in or continues her in unlawful activity and has the effect of encouraging prostitution. In such a situation the amount to be received for the goods or services furnished to her has no relation to the value thereof but rather is dependent upon and geared to the industry and vigor with which she plies her trade."

When a defendant claims that any money accepted from a prostitute's earnings was in consideration for such things as room and board, it becomes an issue for the trier of fact whether there was indeed consideration. *People* v. *Podsiad* (1940), 295 Mich 541.[1] In any event, since the amount of money given to defendant, approximately $1,200, was clearly far in excess of the value of the living expenses of Miss Bradley for three weeks, the trial court could properly determine that payment of these funds was without any consideration.

Next we are told that defendant was deprived of the effective assistance of counsel in the proceedings below in that defendant's trial counsel failed to produce two material witnesses whose testimony might have refuted that given by Miss Bradley. We are unable to say that counsel below did not call these witnesses as a matter of trial strategy.[2] This Court has observed in *People* v. *Joseph* (1970), 24

---

[1] See, also, *People* v. *Harris* (1942), 300 Mich 463, 466, where a conviction of this nature was upheld when it appeared that, while part of the payment of a prostitute's earnings were in consideration of clothing, part of her earnings were handed over without consideration.

[2] Defendant has not explained what testimony these witnesses could have given which could have aided him in his defense.

Mich App 313, that defendant is not necessarily denied adequate representation when his attorney fails to call a witness.

"With regard to the failure to call witnesses, one court has said, 'the failure to produce and put on the stand material witnesses is merely an error of judgment which does not constitute lack of effective representation of counsel.' *Hoffler* v. *Peyton* (1966), 207 Va 302, 311 (149 SE2d 893, 899)."

Defendant also claims that the awarding of substantial witness fees to Miss Bradley at the conclusion of the trial violated his right to a fair trial.[3] At the outset, it must be emphasized that the payment of witness fees under the statute is by no means made contingent upon the offering of testimony favorable to the prosecution. The witness is entitled to this compensation regardless of his testimony. Since this is the case, we fail to see how defendant can correctly assert that the witness was induced to give evidence damaging to defendant. Nor are we inclined to say that due process requires that a witness testifying on behalf of the prosecution be paid in advance of his testimony. A witness is less likely to give testimony influenced by the possibility of gain, the argument goes, if his compensation is in his pocket before he takes the stand. *Chase* v. *Kalamazoo Circuit Judge* (1908), 154 Mich 271, points out that the proper time for fixing witness fees in a criminal matter is after the amount due the witness is clear. It would be, prac-

---

[3] The witness was detained 100 days to insure her appearance at defendant's trial. MCLA § 767.35 (Stat Ann 1954 Rev § 28.975) permits a trial court to commit material witnesses in criminal matters. *Robinson* v. *Chambers* (1893), 94 Mich 471, recognizes that commitment of a material witness by the court entitles the witness to the applicable *per diem* statutory witness fee for each day of detention. MCLA § 775.13 (Stat Ann 1971 Cum Supp § 28.1250) fixes the statutory witness fee at $12 per day.

tically speaking, impossible for the court to assess witness fees in advance of the testimony, since it would be sheer conjecture as to how long a witness might have to be detained prior to trial and how long his presence might be necessary during the trial itself.

Defendant's other assignment of error is so insubstantial as not to warrant discussion.

Affirmed.

All concurred.